Judge Underwood
delivered the opinion of the Court.
The bill alleges, that Phelps obtained judgments against John Wolford, and that executions issued, and were levied on two tracts of land, as his estate, which land he had mortgaged to Phelps, previous to the sale; that the complainant, now appellant, attended and purchased the land, when sold by the sheriff, believing that John Wolford’s title thereto was good, being ignorant of the mortgage; that he executed two sale bonds, with surety, one fdr $>366 26, the other for f205, and has paid part of the money; that Wolford’s title was represented on the day of sale, to be good, and he purchased, believing it to be the fact; that Phelps was present at the sale, and fraudulently concealed the fact, that he had a mortgage on the land, and should claim it in virtue thereof; that Phelps has caused executions to issue on the sale bonds, and is proceeding to collect the money, and that he, Phelps, now refuses to surrender his claim to the land, and gives it out in speeches, that he will hold salid land, by virtue of his mortgage.
The bill also charged, that the sale was void, because* the sheriff who sold the land, had resigned his office, before the sale was made.
Upon the foregoing grounds; the complainant prayed for, and obtained an injunction, suspending the collection of the sale bonds. The relief sought was, that the defendant, Phelps, should be compelled to relinquish his claim to the land, or that the contract might be rescinded, and Phelps compelled to repay $ 180, with interest, which the complainant had paid him. A prayer for general relief was also added. It does not appear, from any allegation, whether the debt, to secure which, the mortgage was executed, was the same for which Phelps had obtained judgments, and issued the executions thereon, in virtue of which the land was sold, or whether it was entirely a differ- *32 cnt debt. Phelps is called on to exhibit his claim to the land. The sale bonds are exhibited as part of the bill, by way of reference, and from them it appears, that one of the tracts was sold, for more than th¿ amount of the execution, and that the defendant in the execution, agreed to take the private note of the purchaser, for the surplus. Phelps filed a demurrer to the bill. The court, on the demurrer, decreed a dissolution of the injunction, with damages, and dismissed the bill, from which decree this appeal has been prosecuted.
A court of chancery, hah power to set aside a sale, under execution, upon «uch a state of case as would ordinarily give jurisdiction.
A sheriff who levies upon land, not Subject to execution, violates his duty He is bound to discriminate between a sale of legal title, and of an equity of redemption, and to notify bidders.
*32 Two important questions present themselves for consideration. 1st. How far shall the principle of caveat emptor, apply to this case. 2d. Has Phelps, from the facts alleged, and which, upon the demurrer, must be taken as true, been guilty of any fraud, which authorizes the interposition of the chancellor? Before these questions are disposed of, it may not be improper to make a preliminary remark, in regard to the jurisdiction of a court of chancery, over the subject involved in the controversy. By a statute of 1811, I. Dig. 516, sales of land, for many causes, when made under executions, may be set aside, on motion, in a court of law; and hence, it might be contended in this and other cases similarly situated, that a court of chancery ought not to interfere. In the case of Blight’s heirs vs. Tobin, &c. not yet reported, this question was considered, and decided in favor of the jurisdiction of a court of chancery, in revising sales of land, under execution, upon the presentation of facts, ordinarily cognizable by the chancellor, operating upon the sale, so as to render it illegal, and against conscience! The case of Gist vs. Frazier and Stewart, II. Lith 118, was a bill in chancery, to set aside a sale of lands, made by a sheriiiQ in virtue of an execution. These cases settle the question of jurisdiction.
To proceed upon the first point. It is a principle well settled, that the officers of the law are presumed to do their duty, until the contrary appears. Lands are subjected to execution, by statute. The legal title only, was liable, until the act of 1821, subjected equities of redemption. It is the sheriff’s duty not to *33 levy ón land, unless it be subject, by law, to execution. In the case of M’Connell vs. Brown, V. Monroe, 478, it has been decided, that a sheriff cannot levy, on and sell land,of which the defendant in the execution, is not possessed-, but which is in the adverse posse.-sion of another.
If def’t in execution, wish to give up land, the sheriff should require evidence of title,unless exhibited he is not bound to take land.
Whether this case can be supported on principié or not, at present need not be inquired into. It is referred to, merely for the purpose of shewing, in case it is adhered to, that at law, the sheriffs deed may be regarded as a nullity, when there is not a regular deduction of title from the commonwealth to the defendants in the execution;
The purchaser of an equity of redemption, has a very different interest in the land bought, from the interest he would have acquired, if the land had not been mortgaged, and the title had been free from in-cumbrance. Different laws apply to these different subjects of sale. The nature of the sheriff’s deed should correspond with the subject of sale, and ought to specify the extent of the interest conveyed. The sheriff’s return should be according to the truth of the case'; and in it, he ought to discriminate between a sale of the absolute title, and a mere equity of redemption. From his duties, in these respects, it results, that it is his duty to make known to bidders; the nature of the interest which he offers for sale.
The sheriff, in contemplation of law, is the disinterested agent of the parties,in the faithful discharge of prescribed duties. He is prohibited from levying on land, if other property can be found, sufficient to satisfy the execution. If the defendant in the execution, desires to surrender land, it is his duty to “produce sufficient vouchers (to-wit: title papers,) or make other proof, sufficient to satisfy the sheriff, that be hath right to the land tendered, instead of other property.” (I. Dig. 514.) If this is not done, the sheriff is not bound to take land. All are presumed to know the law. With a knowldege then, of the foregoing principlés, suppose a stranger happens ata sale of land, made under execution, and becomes the purchaser. It turns out, that his purchase is worthless. .He firtds afterwards, that the defendant in thecxcca *34 tion, had no interest whatever, in the land. Shall he be compelled to part with his money, for nothing? - without the semblance of consideration? Shall we say to him, caveat emptor? We think not. There is every thing in the conduct of the sheriff, to produce a belief, with the purchaser, that the sheriff would not pretend to sell, unless he had authority, and the defendant owned the property. If it turns out otherwise, the purchaser is deceived by appearances. And then, to hold him to his purchase, he must be told that he risked the defendant’s title, and that he was 'bound to examine into it. May he not reply, it was the sheriff’s duty not to levy, uuless the “vouchers or proofs” of title were satisfactory, and that he acted upon the presumption, that the sheriff had done his duty? We think a purchaser might well use such language.
Duty of snor-iff to ascertain the title of def’t, in execution, to land, before he sells under execution. The principle, caveat emptor, does not apply to a purchaser.
If the defendant’s title is to be inquired into, before sale, it is to be done either by the sheriff or the bidders. To us it seems, that the law, so far as it speaks on the subject* requires the sheriff to do it. He is, in no case, answerable for failing to sell, that which the defendant does not own; he is often liable if he does. There is every consideration to induce the purchaser to believe, that he is to obtain title to the land. To require him to search recording offices, with a view to ascertain the title, would be to impose a duty upon the bidders, troublesome and expensive? which many of them are incompetent to perform, and which would result, in a majority of cases, in disappointment. The consequence of such requirements, would be to affect, seriously, the price of land, when sold under execution, for it would create distrust, in the acts of the sheriff. In the case of Bell vs. the Commonwealth, for the use of Clark, decided at the present term, cases were indicated, where the sheriff ought not to proceed to levy; at least, would not be responsible for not making a levy on land, unless it was pointed out, and shown to him by the plaintiff in the execution, as the property of the defendant. If a tract of land is not surrendered by the defendant in the execution, and not pointed out by the plaiatiff? as a subject of the levy, the sheriff then takes it upon his own judgment and knowledge.
Purchaser of land at sheriff’s sale, may be relieved from sale bond, when the title fails thro’ the fraud or mistake of pl’lff. in execution, or oí ‘heriff, or when he has been deceived..
If the plaintiff points out and shews the land, he then holds out to the world, that the land' on which he directs his execution to be levied, is subject to the payment of his debt. If he has been instrumental in causing land to be sold by the sheriff, when the defendant in the execution had no interest in it, he has no just cause of complaint, when á purchaser resists the payment. It was the plaintiffs fault to endeavor to make his debt, of property not owned by his debtor, and can only be regarded as a fraud upon the rights of others. If the sheriff makes the levy on land, not being directed by the plaintiff in the execution and acts in good faith, it is a mistake on his part, if the land is not subject to the execution. If he takes the land in execution, knowing that the defendant has no title, his conduct is a fraudulent violation of duty; and whether it be a mistake ora fraud on the part of the sheriff, we think the purchaser entitled to relief. The sheriff will be answerable to the plaintiff in the execution for mistakes, if they be not excusable and always free from frauds, whereby, the plaintiff is injured. We cannpt well imagine a case of the sale of land, by a sheriff under execution, when the land was not subject to the execution, unless it has been brought about through fraud or mistake, not on the part of the purchaser, most frequently, but on the part of others. We do not perceive any insuperable reason, founded in public policy, we know of no express adjudication, and we cannot find any principle of morality, which prohibits a purchaser at sheriff’s sale, from asking at the hands of the chancellor, relief against a sale bond, executed without consideration, through a fraud practised upon him,, or through mistake. Consequently, we shall not es-top the complainant in this case, by saying to him ca-. veat emptor.
There may be cases of sales under execution, where the purchaser could not ultimately hold the property, and yet be compelled to pay the purchase money. They are cases, where the defendant’s title passed by the sale, although it was not the best title, and they must not be stained with fraud or mistake. In relation to such, it is not necessary to say more- *36 now, as we are of opinion, the present is not a case of that description.
When a mort gae;ee stands by and hears the title of mortgagor, to the mortgaged premises, represented as valid, ■when offered for sqlq under execution, and permits a bidder to purchase, concealing the mortgage, & especially if he be pl’tff. in the execution he is guilty of fraud, and the purchaser will be relieved in equity. Sheriff cannot sell more than will satisfy the execution &c. unless the thing sold he indivisible.
Upon the second point. We are of opinion, that the facts alleged,, do shew, that Phelps was guilty of fraud. It is charged, that the title of the defendant in the execution was represented as good, That Phelps was present, when the sale took place, arid fraudulently concealed the existence of the mortgage. It must be taken, that the absolute title was sold, and not the mere equity of redemption, The sale bonds exhibited and referred to, prove that the entire estate was exposed for sale, and not the equity of redemption. Phelps was plaintiff in the executions under which the lands were sold. The sale was made for his benefit. He is represented as standing by, and permitting the complainant to purchase the entire estate, ignorant of the mortgage, and designing in his heart, to make the most out of the sale, and after-wards intending to subject the same land under his mortgage. Such intentions are not eompa'ible with moral purity, and are equally repuguant to legal honesty. It was Phelps’s duty as a party concerned in the executions, and the mortgage, to make known, that nothing but Wooiford’s equity of redemption could be sold. He should so have instructed the sheriff. It does not appear whether the debts for which judgments had been obtained, were the debts to secure which, the mortgage was executed. If they be the same, which will probably appear, in the further progress of the cause, a question will qrise, whether Phelps was not bound to proceed against the mortgaged property in equity alone. We will not anticipate a decision of it. We observe from one of the sale bonds, that the tract of 100 acres was sold for more than the amount of the execution. The sheriff had no authority in law, to sell the whole tract, if less would have paid the debt. This,though is not made a ground for attacking the sale, in the bill.
There is nothing in the allegation, that the sheriff had resigned, and was put of office, at the time he made sale of the land. The case of Lopland vs. Ewing, V. Lit. 42, settles this question.
Cunningham, for appellant; Denny, for appellee.
In the present aspect of the cause, John Wolford is a necessary party. He should be brought before the court. For this cause alone, it was proper to sustain the demurrer. But then, in sustaining the demurrer for this cause, it was erroneous to dismiss the bill absolutely. It should have been done without prejudice.
Wherefore, the decree must be reversed, and set aside, and the cause remanded, when the circuit court will grant the complainant leave to confess the demurrer, and amend his bill, or dismiss the same without prejudice. If leave to amend is granted, the cause must progress in conformity to this opinion. The appellant must recover his costs.